GEORGIA,
Chatham Co.
JAN. 1805.

State
vs.
Monaquo et
Segar.

*Minutes of Superior Court, p.* 107, *letter F.*

STATE

*vs.*

MARCO MONAQUAS, *al. dict.* MARCO MONAQUO, and JOSE SIERRA, *al. dict.* JOSEPH SEGAR.

INDICTMENT FOR MURDER.

AT January Term, 1805, *Marco Monaquo* and *Joseph Segar,* two Spaniards, were tried for the murder of one *Georges Martin. Joseph Segar* was charged in the indictment as a principal in the second degree. The attorney general produced in evidence the dying declarations of the deceased, taken before *Charles Harris*, Esq. Mayor of the city of Savannah, and *Sheftall Sheftall*, Esq. justice of the peace. This species of testimony developed a train of facts and circumstances, which placed the guilt of the prisoners, particularly *Marco Monaquo*, beyond the possibility of doubt. The declarations of the deceased were taken when " *in extremis*," and under a strong belief expressed by himself that he could not recover.

Doctor *Moses Sheftall* deposed, that one of the wounds received by the deceased, generally proved mortal ; and that after examining and probing it, he had no hopes of his recovery. At this time, and under these circumstances, the declarations of the deceased were taken by the magistrates, they having previously apprised him of his perilous situation, and the nature of the oath they were about to administer to him.

It appeared from this evidence, that the deceased was one of the crew of a privateer, called *Republique*, which arrived in this port ; that he left the said vessel in company with three Spaniards, a Portuguese, and a black man ; that they intended to go to Charleston, but before they left Savannah they separated, and the deceased and a Spaniard or Portuguese travelled together on the road leading to Augusta or Charleston, when he and his companion overtook the three

other Spaniards, who had been ahead of them, and that after all of them had walked some time together, they laid down to sleep. Whilst the deceased was sleeping, one of the Spaniards struck him on the back with a large knife or dagger : as soon as he awoke was stabbed in the arm, and rising to defend himself, found that the other three Spaniards and the negro were gone ; the deceased discovering that his life was in imminent danger, being unarmed, ran,—the Spaniard pursued him, found himself tired, stopped to face the Spaniard, when the said Spaniard made two or three thrusts at him, and gave him two or three wounds, and then told him, that unless he delivered up his money he would kill him.

GEORGIA,
Chatham Co.
JAN. 1805.

State
vs.
Monaquo et
Segar.

The deceased gave up his money, amounting to $15, and a gold ring. After the receipt of the money and ring, the Spaniard made another thrust at him, wounded him, observing, " *that he gave that in way of payment;*" the last stab or wound was given to the deceased in the bowels. The Spaniard also robbed the deceased of his hat and shoes. The dagger being shown to the deceased, he recognised it as the same weapon with which he had been wounded.

After the deceased had received his last wound, he walked as near the man as his weakness would permit. Saw another Spaniard come up and meet the *one* who had stabbed him, who asked the said Spaniard if he had killed him, (the deceased) and taken his money ? Upon which the other replied, that he had not killed him, (the deceased,) but that he had given him something that would not let him live long. These two Spaniards again pursued the deceased ; he ran fast enough to get out of their way, and afterwards saw them go into the road leading to Charleston. The deceased tried to reach Savannah, but could not ; went into a house on the road side, and was brought into the city in a litter or cart.

The deceased had no previous quarrel with these two Spaniards, and could not remember their names. The prisoners being confronted with the deceased, he immediately

3

GEORGIA,     recognised and identified them, *Marco Monaquo*, as having
Chatham Co.
JAN. 1805.   given him the mortal wound, and *Joseph Segar*, as having aid-
ed and assisted, in the manner stated.

State          This is the substance of the examination of *Georges Mar-*
vs.
Monaquo et    *tin*, (taken before the magistrates,) who died a few days after-
Segar.
             wards, in great agony.

A question arose on the trial whether the declarations of
the deceased in the manner they were obtained, should be
left to the jury ? The court after examining the authorities,
decided, that the evidence was admissible.

In support of the evidence the attorney general cited *Wood-*
Leach, C. L.  *cock's* case, C. L. p. 397, and declared it to be the most ap-
397.  Wood-
cock's case.  posite case he could produce.

The prisoners' counsel cited *Dingler's* case from the same
authority ; and relied much upon it in their opposition to the
evidence : but the court was of opinion, that that case was
so analogous in its principle to the case of *Woodcock*, that it ra-
ther operated against, than in favour of the objections of the
counsel.

In the course of the discussion of this question, the follow-
1 Hale, 585. 2  ing authorities were cited. 1 Hale, 585. 2 Strange, 925. 1
Strange, 925. 1
Strange, 499.   Strange, 499.    They are contained in the margin of the case
6 State Trials,  reported by Leach, as also the following, 6 State Trials, 195.
195.202. 9 Harg.
Sta. Trials, 161.  202. *Bambrige's* case, 9 vol. of Harg. State Trials, 661. It was
clearly in proof, that the declarations of *Georges Martin* fell
under the operation of the general principle laid down by
Lord Chief Baron *Eyre* :   " They were made in extremity,"
when the party was at the point of death, and when every
hope of this world was gone, when " every motive to false-
hood was silenced, and the mind was induced, by the most
powerful considerations, to speak the truth."

*Robert Mullady* deposed, that, the day or the day after the
mortal wound was charged to have been given, the prisoner
stopped at his house on the Augusta road ; that he saw the
same dagger (which was recognised by the deceased) in the
possession (to the best of his recollection) of *Marco Monaquo ;*

that the said *Marco Monaquo* conducted himself very violent-
ly during a short stay he made at the house of the witness,
and appeared by his gesticulations to be menacing the life of
a Spaniard who accompanied him.

GEORGIA,
Chatham Co.
JAN. 1805.

State
vs.
Monaquo et
Segar.

That the said *Marco Monaquo* drew a dagger and made a
cross upon the floor of the witness' house, and it struck
the witness, that, as he at the same time addressed himself
with great vehemence to the Spaniard whom he had previous-
ly menaced, the cross was made to extort an oath from the
said Spaniard, not to disclose some circumstances which had
occurred. The witness was induced to entertain this impres-
sion, from his knowledge of the forms attached to the oath of
a catholic.

No testimony was offered by the prisoners.

The jury returned a verdict of guilty ; but recommended
*Joseph Segar* to mercy.

When the prisoners were brought to the Bar, to receive
their sentence, the following grounds were urged in arrest of
judgment, viz.

1. Because there are no issues made up between them,
the said *Marco de las Maurignos, al dict. Marco Monaquo,*
and *Jose Sierra, al dict. Joseph Segar,* upon which the verdict of
the jury can be founded.

2. Because the said prisoners were indicted and tried
jointly together by the same jury, and thereby deprived of
the privilege secured by law to each and every person
charged with a felony, to wit, of objecting to twenty persons,
without showing any cause whatever.

*Allen* and *Stevens,* counsel for the prisoners, in support of
the motion, cited 2 Hale, 217. 2 Lev. 223. 133. 2 Hawk.
470. 2 Hale, 219.

2 Hale, 217. 2
Lev. 223. 133.
2 Hawk. 470. 2
Hale, 219.

*Charlton,* attorney general. *First ground.* Issues have been
made up between the state and the prisoners, pursuant to
the practice which obtains on the criminal side of this court.
The issues joined on arraignment between culprits and the
state are oral. Crown Cir. Comp. p. 12. Nothing ever ap-
pears on the minutes of this court, save a bare mention of the

Crown Cir.
Comp. 12.

GEORGIA,
Chatham Co.
JAN. 1805.

State
vs.
Monaquo et
Segar.

4 Tuck. Blk.
339, 340. 2
Hawk. 399.

App. to 4
Tuck. Blk. 1.

arraignment (which presupposes a *viva voce* issue) and a de-signation of the day of trial. This has been the uniform prac-tice of this court.

But, say the counsel for the prisoners, the *oral issue* should appear on the indictment. Where is that doctrine maintain-ed ? Not by the British books ; for they express the con-trary. "However it may have arisen, the joining of issue, which though now *usually* entered on the minutes, is no otherwise joined in any part of the proceedings." 4 Tuck. Blk. 339, 340. 2 Hawk. 399.

The record of this court has not a shade of analogy, to the record contained in justice Blackstone's appendix, (vide ap-pendix to 4 Tuckey, Blk. s. 1. Record of an indictment and conviction at the assizes,) and " *the issue is no otherwise join-ed in any part of the proceedings.*"

Is not the indictment a part of *the proceedings ?* The issue therefore, cannot appear on the indictment. In short, the is-sue cannot be entered on a *record* (*Hawkins* must mean a re-cord) of this court, because we have no record similar to that contained in the British books : we cannot therefore conform to their practice.

It results, that the issue joined between this state and a prisoner, must necessarily be oral ; and that it is not re-quired to enter that issue on the indictment. If the issue appears at all, it must appear on the whole of the record, and not on a part of the proceedings.

*Second ground.* The prisoners were legally indicted and tried together.

Principals in the first and second degree, may be indicted jointly. " In all cases where a crime is the joint act of a number of prisoners, or a number are present and assisting, so as to be responsible for the crime, they may be indicted and tried jointly or severally ; for though in consideration of law, the crime of one cannot be considered the crime of ano-ther ; yet, when several join in the commission of a crime, they may be joined on the trial.

" When sundry persons are present and aiding the com_

mission of a crime, they may be joined in the trial." 2 Swift, System, 283. 1 Hawk. 82. 108. Fost. Cr. L. 347. 349, 350, 351. 1 Hale, 437. 463. 2 Hale, 344, 345. 1 Hale, 615. Plowden, 97. 100, 101. vide particularly 4 book Blk. p. 34, in notes. The indictment expressly charges *Jose Sierra*, or *Joseph Segar*, as principal in the second degree. He was present, aiding and abetting. The attorney general here drew the distinction between a principal *in law*, or in the second degree, and an accessary. If *Joseph Segar* had been charged as accessary, he admitted, he could not have been brought to his trial before the principal had been convicted and attainted.

On this distinction he cited Fost. 367. Hale, 623. 1 Hale, 615, 616. 4 Tuck. Blk. 36, 37. 1 Hale, 618.

The refusal to allow the prisoners their separate challenges doth not appear upon the record; it is an *extrinsic* allegation, and therefore the court ought not to notice it.

Nothing can be stated on motions in arrest of judgment *dehors* the record. "Arrests of judgment arise from intrinsic causes appearing upon the face of the record." Tuck. Blk. 3d vol. 393, and all the authorities on the doctrine.

But admitting this objection to have some weight, still it is made too late. The privilege of separate challenges must be claimed before the jurors are sworn; afterwards the party is deprived of that inestimable right. *Vide the Address of the Clerk of Arraigns*, Crown Cir. Comp. 13.

The attorney general concluded with the following quotation from Sir *Matthew Hale*, which he requested might be permitted to have some influence in the determination of the court. "In favour of life, great strictness have all times been allowed and required in points of indictments; and the truth is, that it is grown to be a *blemish* and *inconvenience* in the law, and the administration thereof; more offenders escaping by the over easy ear given to exceptions in indictments, than by their own innocence; and many times gross murders, burglaries, robberies, and other heinous and crying offences escape, by these unseemly niceties; to the

GEORGIA,
Chatham Co.
Jan. 1805.

State
vs.
Monaquo et
Segar.

2 Swift, Syst. 383. 1 Hawk. 82. 108. Foster, 347. 349, 350, 351. 1 Hale, 437. 463 2 Hale, 344, 345. 1 Hale, 615. Plowden, 97. 100, 101. 4 Blk. 34. notes.

Fost. 367. Hale, 623. 1 Hale, 615. 616. 4 Tuck. Blk. 36, 37. 1 Hale, 618.

3 Tuck. Blk. 393.

Cro. Cir. Com. 13.

GEORGIA,        *reproach* of the law, to the shame of the government, to the
Chatham Co.
MAY, 1805.      encouragement of villany, and to the *dishonour* of *God.*"

State           This being a case of the first impression in this district,
vs.             the judge said, he was not prepared to give an immediate
Monaquo et      decision ; and would solicit the opinions of the judges of the
Segar.          Western and Middle Circuits.

The prisoners were remanded.

---

*May Term,* 1805.

AT this term the prisoners were again set to the bar, when
the honourable *George Jones,* judge of the Superior Courts
of the Eastern Districts of this state, delivered the following
opinion :

*Judge Jones.*—In considering the objections of the priso-
ners in arrest of judgment, at the last term, the second ob-
jection was overruled : for that if they had wished the liberty
of challenging peremptorily each twenty jurors, they should
have claimed that liberty when set to the bar to be tried ;
but having agreed in their challenges, they could challenge
but twenty in the whole, and one jury was therefore rightly
Fost. 16. Kel.  sworn and charged with them. Fost. 16. Kelyng, 9. 3 Salk.
9. 3 Salk. 81.  81.

The first objection I considered as an argument of some
weight, and my reflections have since confirmed that opinion. I
can find no decision in the authorities on that subject ; but this
may proceed from the system and regularity of the courts
whence we seek for precedents : for in those, it is made the
duty of the clerk to record the prisoner's plea, and on the
general issue, culprit to reply. By this replication, the king
2 Hale, 219. 4  and the prisoner are therefore at issue. 2 Hale, 219. 4 Blk.
Blk. Com. 339.  Com. 339. None of the statutes of jeofails extend to indict-
ments, and therefore a defective indictment is not aided by ver-
2 Hale, 195.    dict. 2 Hale, 193. And, says the same authority, in favour of life,
great strictness have been, in all times, required in points of

indictments ; and the truth is, that it is grown to be a blemish and inconvenience in the law and the administration thereof. More offenders escaping by the over easy ear given to exceptions in indictments, than by their own innocence.

It appears to have been the uniform practice in the courts of *this state*, for the attorney general to state the prisoner's plea in the indictment, and to add a similiter in abbreviated terms. And from the authorities cited, it would seem, that in indictments, a strict adherence to forms is required.

But a record of the issue, however abbreviated, appears to be indispensable : for the law allows many pleas by which a prisoner may escape death, but only one plea in consequence whereof it can be inflicted, viz. on the general issue of not guilty. After an impartial examination and decision of the facts, by the unanimous decision of a jury, I may have been disposed to view this objection in its strongest light, in *favorem vitæ;* but the opinion is the result of my best judgment.

The motion in arrest of judgment, is therefore sustained ; and it is ordered that the prisoners be discharged, upon payment of costs.

Upon the motion of the usual proclamation, the attorney general stated to the court, the prisoners were also charged with a robbery on the highway : whereupon they were remanded.

*Allen* and *Stevens*, for the motion. *Charlton*, Att'y Gen. against it.